United States District Court
Southern District of Texas
**ENTERED**
August 21, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH COTROPIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-742 |
| | § | |
| MARY CHAPMAN, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the court is Defendant Chapman's Motion for Summary Judgment (Doc. 66) and the response filed thereto. For the reasons discussed below, it is **RECOMMENDED** that the motion be **GRANTED**.

## I. Case Background

Plaintiff Joseph Cotropia ("Cotropia") brings this action against an investigator for the Texas Medical Board ("TMB") alleging constitutional violations arising out of the execution of an administrative search warrant at his place of business.

### A. Factual Background

Cotropia is the former supervising physician of a pain management clinic in Houston, Texas.[1] On February 13, 2015, the TMB revoked Cotropia's license to practice medicine after he was found to have failed to comply with the required standard of care for the

---

[1] See Doc. 9-1, Ex. A to Defs.' Mot. to Dismiss, Proposal for Action pp. 4, 6.

treatment of chronic pain.[2] The revocation was based on an administrative law judge's findings that Cotropia violated the Medical Practices Act and TMB rules by prescribing opioids and other controlled substances that were not therapeutic, by failing to maintain records that supported the prescribed therapeutic regime, for inadequately supervising midlevel providers and working at an unregistered, uncertified pain management clinic.[3] That revocation became final on March 17, 2015.[4] Cotropia prescribed opioid medications until March 20, 2015.[5]

On March 27, 2015, Defendant Mary Chapman ("Chapman"), an investigator for the TMB, traveled to Cotropia's office at the direction of her supervisor with an instanter subpoena to search for patient sign-in sheets for all patients seen from February 27, 2015, to the present, and copies of all prescriptions written from February 27, 2015, to the present.[6] Chapman was accompanied by a Drug Enforcement Administration ("DEA") agent.[7]

---

[2] See Doc. 9-2, Ex. B to Defs.' Mot. to Dismiss, TMB Minutes Dated Feb. 13, 2015.

[3] See Doc. 9-1, Ex. A to Defs.' Mot. to Dismiss, Proposal for Action pp. 4, 6.

[4] See Doc. 66-8, Ex. G to Def.'s Mot. for Summ. J., Dep. of Cotropia p. 17.

[5] See id. p. 18. Cotropia claimed that his attorney, Thomas Swate, who officed in a connecting suite, failed to notify him of the revocation. See id. p. 14.

[6] See Doc. 66-9, Ex. H to Def.'s Mot. for Summ. J., Chapman's Dep. p. 2; Doc. 66-3, Ex. B to Def.'s Mot. for Summ. J., Subpoena Duces Tecum p. 3.

[7] See Doc. 66-9, Ex. H to Def.'s Mot. for Summ. J., Chapman's Dep. p. 3.

Chapman presented the instanter subpoena to Cotropia's receptionist, Betty Spaugh ("Spaugh").[8] Spaugh initially stated that she was the record custodian for Cotropia's records and agreed to produce the records but, after talking with Cotropia's attorney, Spaugh denied that she had access to Cotropia's records.[9] Chapman was provided twenty-three documents before Spaugh refused to produce additional records.[10] The DEA agent called for police backup.[11] After a deputy constable arrived, Chapman and the DEA agent left with the twenty-three documents initially provided; Chapman did not consider this to be full compliance with the subpoena.[12] This encounter spanned approximately one hour.[13]

## B. <u>Procedural History</u>

On March 21, 2016, Cotropia filed suit pursuant to 42 U.S.C. § 1983 against Chapman, the TMB, nineteen members of the TMB, and the executive director of the TMB for violations of his Fourth and Fourteenth Amendment rights arising from the "warrantless search and seizure of documents."[14] Cotropia also alleged that the TMB's

---

[8] See id.

[9] See id.

[10] See Doc. 66-2, Ex. A to Def.'s Mot. for Summ. J., Aff. of Chapman p. 2.

[11] See id.

[12] See id. p. 3.

[13] See Doc. 69, Ex. G to Pl.'s Resp. to Def.'s Mot. for Summ. J., Betty Spaugh's Aff. p. 2.

[14] See Doc. 1, Pl.'s Orig. Compl. pp. 5-6.

failure to train Chapman caused Cotropia's constitutional injuries.[15]

On June 9, 2016, Defendants filed a motion to dismiss and on June 28, 2016, Defendants filed an amended motion to dismiss.[16] Cotropia responded on July 12, 2016, and a reply brief was filed by Defendants on July 28, 2016.[17] In their motions to dismiss, Defendants argued that sovereign immunity barred Cotropia's claims against the TMB and its members sued in their official capacities, Cotropia lacked standing to assert claims for injunctive relief and Chapman was entitled to qualified immunity.[18]

On November 16, 2016, the court granted Defendants' motion and dismissed the action with prejudice.[19] Plaintiff appealed the dismissal to the Court of Appeals for the Fifth Circuit.[20] On June 2, 2017, the appeal was dismissed for want of prosecution.[21] On June 19, 2017, the appellate court reopened the appeal.[22]

On March 27, 2018, the Fifth Circuit affirmed the dismissal of the TMB, the members of the TMB, and the Board's executive director

---

[15]  See id. pp. 6-7.

[16]  See Doc. 4, Defs.' Mot. to Dismiss; Doc. 9, Defs.' Am. Mot. to Dismiss.

[17]  See Doc. 13, Pl.'s Resp.; Doc. 18, Defs.' Reply.

[18]  See Doc. 9, Defs.' Am. Mot. to Dismiss pp. 10-12, 16-22.

[19]  See Doc. 20, Ord. Dated Nov. 16, 2016.

[20]  See Doc. 21, Not. of Appeal.

[21]  See Doc. 27, Ord. Dated June 2, 2017.

[22]  See Doc. 28, Ord. Dated June 19, 2017.

("Cotropia I").[23] The court reversed the dismissal of the claims against Chapman.[24] In doing so, the court found that Cotropia had alleged sufficient facts to show that Chapman's taking documents from Cotropia's office over his receptionist's objection violated Cotropia's clearly established right to an opportunity to obtain a precompliance review of the administrative subpoena. In so holding, the court expressly recognized that there were statutory and regulatory provisions that granted the TMB instanter inspection authority but, as those arguments were not raised by Chapman in the lower court, it did not consider them. The court also refused to consider as untimely Chapman's Burger[25] argument that the practice of medicine was a closely regulated industry and therefore its regulatory scheme was a constitutionally adequate substitute for a warrant.[26]

After remand, the parties engaged in discovery and, on November 2, 2018, Defendant Chapman filed her motion for summary judgment on the issue of qualified immunity. Briefing is complete and the court now considers the motion.

## II.  Legal Standards

---

[23]    See Doc. 32, Per Curiam Op. p. 2.

[24]    See id. pp. 6-7.

[25]    See New York v. Burger, 482 U.S. 691 (1987); Beck v. Tex. State Bd. of Dental Exam'rs, 204 F.3d 629 (5th Cir. 2000)(finding that the Texas Controlled Substances Act gave the investigators and the DPS agent the right to conduct an instanter warrantless search of a dentist's office).

[26]    See Doc. 32, Per Curiam Op. p. 9.

A.  **Summary Judgment Standard**

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  The movant may meet this burden by demonstrating an absence of evidence in support of one or more elements of the case for which the nonmovant bears the burden of proof.  See Celotex Corp., 477 U.S. at 322; Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1074 (5th Cir. 1997).  If the movant carries its burden,

the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute. Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).

**B.    Section 1983 and Fourth Amendment Standards**

In order to prevail on a claim under Section 1983,[27] a plaintiff must establish that the defendant deprived the plaintiff of his constitutional rights while acting under the color of state law. Moody v. Farrell, 868 F.3d 348, 351 (5th Cir. 2017). Government officials have qualified immunity from Section 1983 "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

Plaintiff's claim of unreasonable seizure of records arises pursuant to the protections of the Fourth Amendment. The Fourth Amendment,[28] applied to state actors through the Fourteenth

---

[27]    The provision reads, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[28]    The full text of the Fourth Amendment is:

The right of the people to be secure in their persons, houses,

7

Amendment, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Reasonableness is the ultimate measure of the constitutionality of a seizure of person or property. See Trent v. Wade, 776 F.3d 368, 377 (5th Cir. 2015)(quoting Fernandez v. California, 571 U.S. 292, 298 (2014)).

Qualified immunity protects an officer even for reasonable mistakes in judgment. See id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004))("The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"); Ashcroft v. Al-Kidd, 563 U.S. 731, 743 (2011)("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

By invoking qualified immunity, a summary judgment movant shifts the burden to the nonmovant to rebut the movant's assertion. Cantrell v. City of Murphy, 666 F.3d 911, 918 (5th Cir. 2012). In order to overcome an assertion of qualified immunity, a plaintiff must produce evidence that the alleged conduct violated a statutory or constitutional right and that the right was clearly established

---

papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

at the time of the challenged conduct.  See Morgan v. Swanson, 659 F.3d 359, 371 (5th Cir. 2011).  The Supreme Court has held that the order in which these two considerations are addressed is at the court's discretion.  See Pearson, 555 U.S. 818-21.

### III. Analysis

In her motion for summary judgment, Chapman argues that in March 2015, she did not have fair notice that the use of an instanter subpoena was constitutionally limited and therefore she is entitled to qualified immunity.  Chapman also argues that the practice of medicine is a closely regulated business that qualifies under an exception to precompliance review of an administrative subpoena, as authorized by New York v. Burger, 482 U.S. 691, 702 (1987), and its progeny.

Plaintiff counters that because his license to practice medicine had been revoked, the primary purpose of the instanter subpoena must have been pretextual and thus was an improper use of the administrative process.  Cotropia also complains that Chapman seized financial records outside the scope of the subpoena.

**A.  Administrative Process Exception to the Warrant Requirement**

It is well-settled that the Fourth Amendment's prohibition of unreasonable searches and seizures is applicable to commercial premises, with the caveat that a business owner's expectation of privacy is less than that expected in an individual's home.  See See v. City of Seattle, 387 U.S. 541, 543 (1967); Donovan v. Dewey, 452

9

U.S. 594, 598-599 (1981). The Supreme Court has found that the expectation of privacy was "particularly attenuated" in commercial property engaged in "closely regulated" industries. See Katz v. United States, 389 U.S. 347, 351-52 (1967).

In Burger, the owner of a junkyard objected to an warrantless search of his business that was authorized by a state statute regulating vehicle-dismantling/automobile junkyard businesses. See Burger, 482 U.S. at 693-94, 698. After the officers found evidence of stolen vehicles, the owner was arrested. Id. at 695-96. The owner moved to suppress the evidence on the ground that the statute permitting the warrantless inspection was unconstitutional. Id. at 696. The trial court held that the junkyard business was a "pervasively regulated" industry in which warrantless administrative inspections were appropriate. Id. The court of appeals reversed, finding that the statute violated the Fourth Amendment's prohibition of unreasonable searches because it authorized searches to be undertaken to uncover evidence of criminality and not to enforce a regulatory scheme. Id. at 698.

The Supreme Court reversed and found that a warrantless inspection of commercial premises in a "closely regulated" industry could satisfy the Fourth Amendment's reasonableness standard if three criteria were met. Id. at 702. First, there must be a substantial government interest that underpinned the regulatory scheme and the related inspection. Id. Second, the warrantless

inspection must be necessary to further the regulatory scheme. Id. And, finally, the inspection program must provide a "constitutionally adequate substitute for a warrant." Id. at 703. In the context of a warrantless inspection, the statute must advise the owner of the property that the search was made pursuant to the law, and the statute limited the discretion of the searching officers as to time, place and scope of items searched. Id.

Applying those factors to the search of Burger's junkyard, the court found that the regulation of auto dismantlers was a new branch of the historically closely regulated business of operating a junkyard. Id. at 707. Addressing the second factor, the Court rejected the court of appeals' concern that the warrantless search was a pretext for a search to uncover evidence of criminality and found that the state could address a major social problem with both an administrative scheme and criminal penalties. Id. at 712. Concluding, the court determined that the challenged statute adequately informed the owner of such a business that inspections would be made on a regular basis by those authorized by the statute and that searches were limited to records, vehicles and vehicle parts on the premises during business hours. Id.

In Beck v. Tex. Bd. of Dental Examiners, 204 F.3d 629, 632 (5th Cir. 2000), the Fifth Circuit applied the Burger exception to allow an instanter inspection of a dental office based on allegations of the mishandling of controlled substances. There, the Fifth Circuit

determined that there was a significant state interest in the regulation of a dentist's use of controlled substances and the search was conducted pursuant to two regulatory schemes. The appellate court found that there was an adequate substitute for a warrant where the statute permitted an administrative inspection by a credentialed official during "reasonable times," and "after stating his purpose." Id. at 638. The court also favorably cited the regulatory scheme that allowed notice and an opportunity to be heard at a subsequent disciplinary hearing, the results of which were appealable in district court. Id. at 635.

Recently, in Zadeh v. Robinson, 928 F.3d 457, 462 (5th Cir. 2019), a different result was reached on an instanter subpoena issued by the TMB. Zadeh, an internal medicine doctor, was the subject of an investigation for violations of the TMB's regulations. At the request of a DEA agent, the TMB initiated an instanter inspection of Zadeh's office. Id. Zadeh and a patient sued for violations of their Fourth Amendment, due process and privacy rights based on that instanter inspection. Id. at 463.

Relevant to the present issue, the district court considered whether the TMB defendants exceeded their statutory subpoena authority by searching and inspecting Zadeh's office and records. Id. at 463. The court ultimately dismissed all Zadeh's constitutional claims. Id.

On appeal, the Fifth Circuit considered whether the TMB

violated the Fourth Amendment when it demanded instanter compliance with its administrative subpoena. Id. at 464. Attempting to evade the court's Cotropia I holding that, absent exigent circumstances, the subject of an administrative search must be afforded an opportunity for a precompliance review of the subpoena, the TMB argued that the practice of medicine was a closely regulated industry and fell within the Burger exception to Fourth Amendment's requirement of a warrant or other precompliance process. Id. at 464-65.

Conceding that the practice of medicine was an extensively regulated profession and had licensure requirements, the Fifth Circuit nonetheless held that various regulatory schemes concerning the operation of pain clinics and the dispensing of controlled substances did not support a conclusion that the medical profession had a history of permitting warrantless inspections and searches of a doctor's office. Id. at 466.

After finding that Zadeh's Fourth Amendment rights had been violated, the court turned to whether the law was clearly established at the time of the search, on October 22, 2013. The court found that the parameters of Burger and Beck were not so clearly established that all reasonable officers would have known that the Burger factors were not present in the context of the administrative search of a doctor's office at the time of the search. Id. at 470. Notably, Zadeh cited no pre-March 2015 case

13

that would have put the TMB on notice that the instanter subpoena would not pass constitutional muster as it had in Beck.

Applying the above legal landscape to the present facts, it was not until August 31, 2018, when the court issued its first opinion in Zadeh, that the TMB and its employees were put on notice that its instanter subpoena process fell outside the Burger and Beck exception. One only needs to read the Fifth Circuit decisions in Cotropia I (March 27, 2018) and Zadeh (July 2, 2019), to conclude that the law was not clearly established in 2015 when Chapman served the instanter subpoena on Cotropia. Prior to those cases, the TMB could arguably rely on Beck's approval of the instanter subpeona process. Therefore, Chapman is entitled to qualified immunity for the execution of the instanter subpoena on March 27, 2015.

**B. Pretext**

Cotropia argues that the instanter subpoena was constitutionally invalid because it was a pretext for a criminal investigation. Chapman argues that this argument is barred by the mandate rule and, alternatively, argues that Cotropia's pretext argument fails as a matter of fact and law.

The mandate rule is a corollary of the law of the case doctrine, which prohibits the district court from addressing issues that were beyond the mandate from the appellate court on remand. See United States v. Lee, 358 F.3d 315, 320 (5th Cir. 2004). "Absent exceptional circumstances, the mandate rule compels compliance on

remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court. Lee, 358 F.3d at 321 (citing U.S. v. Bell, 988 F.2d 247, 251 (1st Cir. 1993)). The mandate rule bars litigation of those issues decided by the district court or those otherwise waived because they were not raised in the district court. See id. (citing Bell, 988 F.2d at 250). The Fifth Circuit has stated, "Remand is not the time to bring new issues that could have been raised initially." United States v. McCrimmon, 443 F.3d 454, 459 (5th Cir. 2006)("All other issues not arising out of this court's ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below."); see also Henderson v. Stalder, 407 F.3d 351, 354 (5th Cir. 2005)(commenting that the narrow ground for remand was not an invitation to add new claims or rationales). In the present case, Plaintiff failed to raise the issue of pretext as a challenge to the instanter subpoena in his complaint or his response to the original motion to dismiss.[29] The only issues before this court on remand were whether Cotropia's claim against Chapman in her individual capacity was barred by qualified immunity, whether there was a consent to search and whether the medical profession was a closely regulated industry.[30]

---

[29] See Doc. 1, Pl.'s Orig. Compl.; Doc. 6, Pl.'s 1st Am. Orig. Compl.; Doc. 13, Pl.'s Resp. to Defs.' Mot. to Dismiss,

[30] See Doc. 32, Per Curiam Op., pp. 9-11.

The court concludes that whether the instanter subpoena was a pretext for collecting information for a criminal investigation was not raised before the district court prior to the court's dismissal of the action and was not raised before the appellate court. As a result, Plaintiff may not raise the issue now as it is beyond the mandate of the remand. Even if the court were to consider this issue, Plaintiff has failed to support his pretext argument with relevant facts or applicable case law.

In Zadeh, the TMB investigator searched Zadeh's medical office accompanied by a DEA agent. See Zadeh, 928 F.3d at 471. Relying on United States v. Villamonte-Marquez, 462 U.S. 579, 584 n.3 (1983) and United States v. Thomas, 973 F.2d 1152, 1155-56 (5th Cir. 1992), the Fifth Circuit rejected Zadeh's argument that the DEA agent's presence was evidence of a pretextual search because the TMB had a valid reason to search the medical office. Id. An administrative search was improper only when performed "solely to uncover evidence of criminality." Id. at 472 (citing Burger, 482 U.S. at 698).

Here, Cotropia has failed to adduce any evidence that the search of his office was solely to investigate a crime. Rather, it appears undisputed that the TMB was searching his office to determine if he was practicing medicine after his license had been suspended, a legitimate administrative purpose. Chapman is entitled to summary judgment on this issue.

**C. Scope of the seizure**

16

Cotropia argues that some of the records seized by Chapman exceeded the express scope of the instanter subpoena and, therefore, Chapman violated Cotropia's constitutional rights. Chapman counters that Cotropia has expressly disclaimed any ownership interest in those particular records seized and, therefore, lacks standing to complain about the seizure of those records.

It is well-settled that Fourth Amendment rights are personal rights that may only be asserted by the person whose rights were violated. Rakas v. Illinois, 439 U.S. 128, 133-34 (1978). In Rakas, the Supreme Court found that two passengers in a vehicle searched by police had no ownership interest in the vehicle or otherwise a reasonable expectation of privacy in the vehicle. Cotropia only has a Fourth Amendment right to privacy concerning his own records, not records belonging to another. Id.

The subpoena commanded Cotropia to produce: (1) patient sign-in sheets and/or patient log/register for all patients evaluated from February 27, 2015, to the present date; and (2) copies of any and all prescriptions issued for February 27, 2017, to the present date.[31] Only twenty-three pages of documents were actually seized by Chapman that day. Those documents were: (1) thirteen pages of an appointment ledger for the relevant time period; (2) a blank page; (3) two sign-in sheets for "T.E. Swate, M.D." dated February

---

[31] See Doc. 66-3, Ex. B to Def.'s Mot. for Summ. J., Subpoena Duces Tecum p. 3.

17

25-27, 2015; (4) a two-page ledger reflecting patient payments for February 27, 2015, to Dr. Cotropia; and (5) five credit card receipts showing payments to T.E. Swate ranging from $85 to $195 on February 27, 2015.

At his deposition, Cotropia agreed that the patient sign-in ledgers belonged to his practice.[32] He also agreed that the patient sign-in ledgers captioned "T.E. Swate, M.D." were used by him on the dates reflected.[33] Those documents in categories 1 and 3 fall within the plain reading of the subpoena.[34] Category 4, the two-page ledger from February 27, 2015, showing patient names and payments also falls within the plain language of the subpoena because it discloses the patients seen on a that day and therefore is analogous to a patient log or register. As these records were within the scope of the subpoena, Cotropia's argument that the documents seized were outside the scope of the subpoena fails.

Category five, the credit card receipts for T.E. Swate, does not fall within the subpoena. However, Cotropia disavowed any knowledge or ownership of the Swate receipts.[35] Cotropia even denied

---

[32] See Doc. 66-8, Ex. G to Def.'s Mot. for Summ. J., Dep. of Cotropia pp. 6-7.

[33] See id. p. 7.

[34] As to category 2, the seizure of a blank sheet of paper does not raise a constitutional claim.

[35] See Doc. 66-8, Ex. G to Def.'s Mot. for Summ. J., Dep. of Cotropia p. 14.

that they had been seized from his office on March 27, 2015.[36] Based on his testimony, Cotropia lacks standing to complain about the wrongful seizure of these credit card receipts. Chapman is entitled to summary judgment on this claim.

## IV. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 21st day of August, 2019.

_Nancy K. Johnson_
United States Magistrate Judge

---

[36] See id. Cotropia stated, "I don't know where they were recovered from." When asked if the credit card receipts were his, he responded, "No," for each receipt. Id. p. 15.